# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# ABILENE DIVISION

| | |
|---|---|
| RYAN GUILLOT, individually and on behalf of all others similarly situated, <br><br> v. <br><br> COWHAND SADDLERY, LLC d/b/a COWHAND SERVICES, LLC d/b/a COWHAND SERVICES | **Case No. 1:23-cv-00125** <br> FLSA Collective Action |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Ryan Guillot brings this lawsuit to recover unpaid overtime wages and other damages from Cowhand Saddlery, LLC d/b/a Cowhand Services, LLC d/b/a Cowhand Services ("Cowhand") under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*

2. Guillot and the other workers like him were typically scheduled for at least 12-hour shifts, 7 days a week, and their hitches routinely lasted for weeks at a time.

3. Guillot and the other workers like him often worked even more than that, but they were not paid overtime for hours worked in excess of 40 hours in a single workweek.

4. Instead of paying overtime as required by the FLSA, Cowhand improperly classified these workers as independent contractors and paid them a single day rate for all hours worked each day.

5. This collective and class action seeks to recover the unpaid overtime wages and other damages Cowhand owes these workers under the FLSA.

### JURISDICTION AND VENUE

6. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events at issue occurred in this District and Division.

8. Guillot performed work for Cowhand in this District and Division.

**PARTIES**

9. Guillot worked for Cowhand from September 2021 until April 2023.

10. While working for Cowhand, Guillot worked exclusively for Cowhand.

11. Guillot was an operator for Cowhand.

12. Guillot was paid a day rate.

13. Guillot was not paid a salary.

14. Guillot was not paid on a fee basis.

15. Guillot was not paid by the hour.

16. Cowhand classified Guillot as an independent contractor.

17. Guillot represents a collective of similarly situated workers under the FLSA. *See* 29 U.S.C. § 216(b) (the "FLSA Collective"). This FLSA Collective is defined as:

> **Current and former workers employed by, or working on behalf of, Cowhand as independent contractors in the United States in the past three years who were paid a day rate.**

18. Throughout this Complaint, the FLSA Collective Members are also referred to as the "Similarly Situated Workers."

19. **Cowhand Saddlery, LLC ("Cowhand")** is a Texas limited liability company.

20. Cowhand Saddlery, LLC does business under the assumed name, Cowhand Services, LLC.

21. Cowhand Saddlery, LLC does business under the assumed name, Cowhand Services.

22. Cowhand may be served by serving its registered agent for service of process: **Matt Lewis, 5342 Fruitland Farm Rd., San Angelo, TX 76903**, or by any other method authorized by law.

## COVERAGE UNDER THE FLSA

23. At all relevant times, Cowhand was an employer of Guillot within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

24. At all relevant times, Cowhand was an employer of the Similarly Situated Workers within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

25. During at least the last three years, Cowhand has been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

26. During at least the last three years, Cowhand has had gross annual sales in excess of $500,000.

27. During at least the last three years, Cowhand was and is part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1).

28. During at least the last three years, Cowhand has employed many workers, including Guillot and the Similarly Situated Workers, who are engaged in commerce or in the production of goods for commerce and/or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person.

29. The goods and materials handled, sold, or otherwise worked on by Guillot, the Similarly Situated Workers, and other Cowhand employees and that have been moved in interstate commerce include, but are not limited to, oilfield equipment and supplies.

30. Cowhand treated Guillot as an employee and uniformly dictated the pay practices to which Guillot was subjected.

31. Cowhand's misclassification of Guillot as an independent contractor does not alter his status as an employee for purposes of this FLSA action.

## FACTS

32. Cowhand provides oilfield support services.

33. Cowhand's oilfield support services include, for example, flowback services.

34. Cowhand provides workers for oilfield support services.

35. To provide these oilfield support services, Cowhand needs operators to perform that work.

36. Many of these individuals worked for Cowhand performing the same or substantially similar job duties as Guillot and were misclassified by Cowhand as so-called independent contractors in connection with Cowhand's oilfield operations.

37. Cowhand needs these workers to perform its oilfield support work.

38. For example, without flowback operators, Cowhand could not provide flowback services.

39. While exact job titles and job duties may slightly differ, Guillot and the Similarly Situated Workers were subjected to the same or similar illegal pay practices for similar work.

40. Specifically, Cowhand classified the Similarly Situated Workers as independent contractors and paid them a daily rate for all hours worked, even when they were working in excess of 40 hours in a workweek.

41. For example, Guillot worked exclusively for Cowhand from September 2021 to April 2023.

42. Throughout his employment with Cowhand, Guillot was classified as an independent contractor.

43. Cowhand typically scheduled Guillot to work shifts of at least 12-hours, for as many as 7 days per week.

44. Guillot frequently worked well in excess of 40 hours per week for Cowhand.

45. In fact, Guillot frequently worked more than 84 hours per week for Cowhand.

46. The work Guillot performed is an essential part of Cowhand's core business.

47. During Guillot's employment with Cowhand and while he was classified as an independent contractor, Cowhand exercised control over all aspects of his job.

48. Guillot was not required to possess any unique or specialized skillset (other than that maintained by all other individuals working in his same job position) to perform his job duties.

49. During the time that Guillot worked with Cowhand, he worked exclusively for Cowhand.

50. Cowhand controlled all the significant or meaningful aspects of the job duties performed by Guillot.

51. Cowhand ordered the hours and locations Guillot worked, tools used, and rate of pay received.

52. Even though Guillot often worked away from Cowhand's offices without the presence of a direct Cowhand supervisor, Cowhand still controlled all aspects of Guillot's job

activities by enforcing mandatory compliance with Cowhand and/or its client's policies and procedures.

53. No real investment was required of Guillot to perform his job.

54. Cowhand determined Guillot's opportunity for profit and loss.

55. Guillot did not provide the equipment he worked with on a daily basis. Cowhand or its clients made the large capital investments in buildings, machines, equipment, tools, and supplies in the business in which Guillot works.

56. Guillot did not incur operating expenses like rent, payroll, marketing, and insurance.

57. Guillot was economically dependent on Cowhand during his employment.

58. Cowhand set Guillot's rate of pay and his work schedule and prohibited him from working other jobs for other companies while working on jobs for Cowhand.

59. Cowhand directly determined Guillot's opportunity for profit and loss, as Guillot's earning opportunity was based on the amount of time Cowhand scheduled him to work.

60. Very little skill, training, or initiative was required of Guillot to perform his job duties.

61. Indeed, the daily and weekly activities of Guillot and the Similarly Situated Workers were routine and largely governed by standardized plans, procedures, and checklists created by Cowhand and/or its clients.

62. Virtually every job function of the Similarly Situated Workers was pre-determined by Cowhand and/or its clients, including the tools to use at a job site, the schedule of work, and related work duties.

63. Guillot and the Similarly Situated Workers were prohibited from varying their job duties outside pre-determined parameters.

64. Moreover, the job functions of Guillot and the Similarly Situated Workers were primarily manual labor/technical in nature, requiring little to no official training, much less a college education or other advanced degree.

65. For the purposes of an unpaid overtime claim, Guillot and the Similarly Situated Workers performed substantially similar job duties related to servicing oil and gas operations in the field.

66. Guillot performed routine manual and technical labor duties that were largely dictated by Cowhand and/or its clients.

67. Guillot was not employed by Cowhand on a project-by-project basis.

68. Guillot was not paid by Cowhand on a project-by-project basis.

69. While Guillot was classified as an independent contractor, he was regularly on call by Cowhand and/or its clients and was expected to drop everything and work whenever needed.

70. All the Similarly Situated Workers performed the same or similar job duties and were subjected to the same or similar policies and procedures by which Cowhand dictated the day-to-day activities performed by each person. The Similarly Situated Workers also worked similar hours as Guillot and were denied overtime pay as a result of the same illegal pay practice.

71. Guillot and the Similarly Situated Workers all worked in excess of 40 hours each week and were often scheduled for 12-hour shifts for days or weeks at a time.

72. Instead of paying them overtime, Cowhand paid Guillot and the Similarly Situated Workers a day-rate.

73. Cowhand denied Guillot and the Similarly Situated Workers any overtime premium for any hours worked in excess of 40 hours in a single workweek.

74. Guillot and the Similarly Situated Workers maintained and worked with oilfield machinery, performed manual labor, and worked long hours in the field.

75. Because Guillot and the Similarly Situated Workers were misclassified as independent contractors by Cowhand, they should receive overtime for all hours they worked in excess of 40 hours in each workweek.

76. Cowhand's policy of failing to pay overtime to its operators, including Guillot, violated the FLSA because these workers were, for all purposes, employees performing non-exempt job duties.

77. Cowhand's day-rate system violated the FLSA because Guillot and the Similarly Situated Workers did not receive any overtime premium pay for hours worked over 40 hours each workweek.

78. Cowhand was aware of the overtime requirements of the FLSA.

79. Cowhand nonetheless failed to pay certain hourly employees, such as Guillot, overtime at the rates required by the FLSA.

80. Cowhand's failure to pay overtime to these hourly workers was, and is, a willful violation of the FLSA.

### COLLECTIVE ACTION ALLEGATIONS

81. The illegal pay practices Cowhand imposed on Guillot were likewise imposed on the FLSA Collective Members.

82. Cowhand employs many other workers who worked over 40 hours per week and were subject to Cowhand's same pattern, practice, and policy of failing to pay overtime at 1.5x the workers' regular rates of pay.

83. Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA.

84. Based on his experience and tenure with Cowhand, Guillot is aware that Cowhand's illegal practices were imposed on the FLSA Collective Members.

85. These workers were similarly situated within the meaning of the FLSA.

86. Cowhand's failure to pay overtime compensation at the rates required by the FLSA result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the FLSA Collective Members.

87. These employees are victims of Cowhand's unlawful compensation practices and are similarly situated to Guillot in within the meaning of the FLSA.

88. Any differences in job duties do not detract from the fact that these salaried workers were entitled to overtime pay.

89. Cowhand's failure to pay overtime compensation at the rates required by the FLSA result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the FLSA Collective members.

90. The FLSA Collective members should be notified of this action and given the chance to join pursuant to 29 U.S.C. § 216(b).

### Cause of Action—Violations of the FLSA

91. Guillot incorporates all other allegations.

92. By failing to pay Guillot and the FLSA Collective members overtime at 1.5 times their regular rates, Cowhand violated the FLSA. 29 U.S.C. § 207(a).

93. Cowhand owes Guillot and the FLSA Collective members overtime for all hours worked in excess of 40 in a workweek, at a rate of at least 1.5 times their regular rates of pay.

94. Cowhand owes Guillot and the FLSA Collective members the difference between the rate actually paid for overtime, if any, and the proper overtime rate.

95. Cowhand knowingly, willfully, or in reckless disregard carried out this illegal pattern and practice of failing to pay overtime compensation to Guillot and the FLSA Collective members.

96. Because Cowhand knew, or showed reckless disregard for whether, its pay practices violated the FLSA, Cowhand owes these wages for at least the past three years.

97. Cowhand's failure to pay overtime compensation to these FLSA Collective members was neither reasonable, nor was the decision not to pay overtime made in good faith.

98. Because Cowhand's decision not to pay overtime was not made in good faith, Cowhand also owes Guillot and the FLSA Collective members an amount equal to the unpaid overtime wages as liquidated damages.

99. Guillot and the FLSA Collective members are entitled to their unpaid wages under the FLSA, including overtime wages in an amount equal to 1.5x their regular rates of pay, plus liquidated damages, attorney's fees, and costs.

## RELIEF SOUGHT

Guillot prays for judgment against Cowhand as follows:

(a) For an order certifying a collective action for the FLSA claims;

(b) For an order finding Cowhand liable for violations of state and federal wage laws with respect to Guillot and the FLSA Collective members;

(c) For a judgment awarding all unpaid wages, liquidated damages, and penalties to Guillot and the FLSA Collective members;

(d) For a judgment awarding costs of this action to Guillot and the FLSA Collective members;

(e) For a judgment awarding attorneys' fees to Guillot and the FLSA Collective members;

(f) For a judgment awarding pre- and post-judgment interest at the highest rates allowed by law Guillot and the FLSA Collective members; and

(g) For all such other and further relief as may be necessary and appropriate.

Respectfully submitted,

*/s/ Matthew S. Parmet*
By: _____
**Matthew S. Parmet**
TX Bar # 24069719
**PARMET PC**
2 Greenway Plaza, Ste. 250
Houston, TX 77046
phone 713 999 5228
matt@parmet.law

**Attorneys for Plaintiff**